UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Timothy Francis Schnoor,

                  Debtor.                              BKY 13-50630

_____

Erik A. Ahlgren, Trustee,                            ADV 13-5030

                  Plaintiff,

                                                                              <u>MEMORANDUM
ORDER</u>

v.

Kim Marie Dailey,

                  Defendant.

_____

       At Duluth, Minnesota, May 18, 2014.

       This adversary proceeding came on for trial on March 24, 2014 on the plaintiff's complaint to avoid the transfer of farm equipment to the defendant. Erik A. Ahlgren appeared *in propria persona*. The defendant appeared *pro se*. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and Local Rule 1070-1. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

## FACTS

       On July 18, 2013, the debtor, Timothy Francis Schnoor, filed a voluntary petition for chapter 7 bankruptcy. Prior to the filing, he owned various pieces of farm equipment, a remainder interest in property owned by his mother, real estate consisting of two parcels, each forty acres, and a log home. The real estate was encumbered by liens held by Alpine Bank and Lake State Bank.

       As stipulated by the parties, the farm equipment and its values are listed as follows:

| Equipment | Book Value |
|---|---|
| John Deere 950 | $1,000 |
| John Deere 4640 | $24,000 |
| John Deere 4430 | $16,000 |
| John Deere 4230 | $10,000 |
| Massey Fergusson 265 | $4,500 |
| John Deere 430 | $3,000 |
| Ford 24' Disc | $2,500 |
| John Deere A2500 | $2,500 |
| John Deere 7200 | $2,000 |
| International 1440 | $8,000 |
| Bobcat | $18,000 |
| Bobcat | $18,000 |
| Kenworth Dump Truck | $18,000 |
| Cleavlan Grater | $2,000 |
| **Total** | **$129,500** |

The debtor transferred the above farm equipment, the two forty-acre parcels and the log home to the defendant, Kim Marie Dailey. The date of this transfer is disputed. The defendant paid a total purchase price of $238,274.87. $100,000 of the purchase price was allocated toward the log home, $50,000 toward the east forty-acre parcel, $50,000 toward the west forty-acre parcel and $35,142.87 toward the farm equipment. The remaining $3,132 went to closing costs.

The defendant does not dispute these allocations. The certificates of real estate value filed with Cass County indicated that the aggregate value of the real estate was $200,000, the title insurance for the real estate had a policy amount of $200,000 and a 2011 appraisal estimated the total value of the real estate between $209,500 and $213,500.

After the transfer, the debtor was left with little assets. In Schedule A to his bankruptcy petition, the debtor listed the total amount of his assets as $113,184.83. This amount included the remainder interest in his mother's homestead valued at $104,481. In Schedule F, the total amount of the debtor's liabilities was listed as $185,196.76.

After the transfer the debtor continued to use the farm equipment and farm the land. The defendant, on the other hand, did not. The defendant testified that in exchange for the debtor's continued use of the equipment and the land she received payments from the proceeds of the crops. Specifically, she received $12,562.30 in 2010 and $11,387.29 in 2011. The defendant never reported this farming business or income on her tax returns. In 2010, 2011 and 2012 the debtor consistently reported and recognized farming income on his tax returns. He also claimed a deduction for farming expenses for repairs and maintenance during those years.

The relationship between the defendant and the debtor spanned two states and many years. The debtor and the defendant met in high school but were mere acquaintances at that time. After high school, in the 1990's, the debtor moved to Illinois. Sometime between then and 2005, the debtor and the defendant reconnected. In 2005, the defendant's also moved to Illinois. In 2006, the debtor sold his Illinois home and claimed he lived on the floor of his work place. The debtor denied living with the defendant during this time but admitted that he would take care of her property and horses while she was out of town. He also testified that from 2006 to 2010 they slept together "every now and again."

In 2009, the debtor left Illinois and moved into his mother's house in Minnesota. In 2010, the defendant also moved to Minnesota and temporarily lived at the debtor's mother' house. Between October 2010 and September 2011 the defendant began paying many of the debtor's debts. Specifically, she made payments totaling $26,469.87 to Alpine and Lake State on the loans encumbering the real estate. In May 2011, the defendant co-signed a loan for the debtor. They also opened a joint bank account and the defendant gave the debtor a credit card connected to her individual account. From there, the debtor started regularly using the defendant's bank account. On July 20, 2013, two days after the debtor filed for bankruptcy, the debtor and the defendant were married. Despite the history of their relationship, the debtor stated on his bankruptcy schedules that his relationship to the defendant at the time of the transfer was "none."

On October 23, 2013, the trustee filed this adversary proceeding to recover the transfer of the farm equipment pursuant to 11 U.S.C. §§ 548 and 550.

3

**ANALYSIS**

The trustee seeks to avoid the transfer of the farm equipment pursuant to § 548.  Section 548 of the Bankruptcy Code provides, in pertinent part:

> (a)(1) The trustee may avoid any transfer …. of an interest of the debtor in property …. that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation….

*Date of the Transfer*[1]

To avoid a transfer under this statute the trustee must prove that it occurred within two years before the date of the filing of the petition.  Here, the trustee maintains that the transfer occurred in December 2011 while the defendant argues that it occurred in October 2010.

At trial, the trustee presented overwhelming evidence in support of his position.  The bill of sale for the farm equipment, the buyer's settlement statement, the seller's settlement statement and the warranty deed each state that the transfer occurred in December 2011.  These documents were produced by third parties, presumably partially with information provided by the defendant and the debtor.  In fact, the debtor put the date of the transfer as December 2011 on his statement of financial affairs.  It was not until this action was brought that the debtor claimed that the transfer occurred earlier.

---

[1] The date of the transfer would not be an issue under 11 U.S.C. § 544, incorporating Minnesota Statute § 513.44, which imposes a six-year statute of limitations for fraudulent transfers.

4

The defendant, on the other hand, provided little evidence to support her claim that the transfer occurred in October 2010. She argues that in October 2010 she and the debtor made an oral agreement in which she promised to assume the Alpine and Lake State loans in exchange for the property and farm equipment. The defendant alleges that payments made from her bank account to Alpine and Lake State in 2010 are evidence of their agreement.

Indeed, between October 2010 and September 2011 payments were made from the defendant's account to Alpine and Lake State. However, during that same time period, the debtor paid the defendant a total of $23,959.59. The defendant explained that these payments were consideration for allowing the debtor to farm her land and use her equipment. However, the defendant did not report this income on her tax returns. Conversely, the debtor not only claimed farming income on his 2010, 2011 and 2012 tax returns but he also claimed a deduction for farming expenses for maintenance and repairs. These deductions are contrary to the defendant's claim that the debtor no longer owned the property after October 2010.

A logical explanation for the debtor's payments is that they were simply intended to reimburse the defendant for making timely payments on the Alpine and Lake State loans. Further, the billing statements for the payments made by the defendant to Alpine and Lake State continued to be addressed and mailed solely to the debtor, and no financing statements were filed by either bank to reflect a change in ownership of the property.

Based on a totality of this evidence, I do not believe that the debtor and the defendant entered into an oral agreement for the transfer of the equipment, much less that they actually transferred it, in October 2010. I find that the transfer occurred in December 2011, well within the two years preceding the bankruptcy filing.

*Actual Fraud*

To prevail on a claim under § 548(a)(1)(A) the trustee must prove that the debtor made such transfer with actual intent to hinder, delay, or defraud any entity to which he was indebted. The Eighth Circuit has held, "because proof of actual intent to hinder, delay or defraud creditors may rarely be established by direct evidence, courts infer fraudulent intent from the

5

circumstances surrounding the transfer." *Brown v. Third Nat'l Bank (In re Sherman)*, 67 F.3d 1348, 1353 (8th Cir. 1995) (citing *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors*, 926 F.2d 1248, 1254 (1st Cir. 1991); *Matter of Fitzpatrick*, 73 B.R. 655, 657 (Bankr. W.D. Mo. 1985)). For guidance, the court may look to the state's codification of the common law badges of fraud. *Id*. "Once a trustee establishes a confluence of several badges of fraud, the trustee is entitled to a presumption of fraudulent intent." *Kelly v. Armstrong*, 141 F.3d 799, 802 (8th Cir. 1998).

Minnesota's Uniform Fraudulent Transfer Act lists eleven badges of fraud to consider in determining actual intent. They include whether:

> (1) the transfer was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was disclosed or concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Minn. Stat. 513.44(b).

Many of the above listed badges of fraud are present in this case. First, the defendant was an insider. The debtor and the defendant were intimately involved at and before the time of the transaction. The debtor testified that they had slept together from 2006 to 2010 "every now and again." He spent time at the defendant's property in Illinois, even when she was away. Apparently, the defendant trusted the debtor enough to request that he take care of her home and her horses while she was out of town. Additionally, in 2010, the defendant lived with the debtor and his mother for a brief period of time before the transfer occurred. Not only was the

6

defendant an insider, but the debtor clearly tried to conceal this fact when he described their relationship as "none" in his bankruptcy petition.

Second, the debtor was insolvent at the time of the transfer. The Bankruptcy Code defines "insolvent" as a,

> financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of (i) property transferred, concealed, or removed with intent to hinder, delay or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title.

11 U.S.C. § 101(32)(A).

The debtor's schedules indicate insolvency at the time of the filing of the bankruptcy petition *and* at the time of the transfer. The debtor did not dispute this fact during testimony at trial. His schedules indicate that he had total assets of $113.184.83. However, the debtor claimed his remainder interest in his mother's property, valued at $104,481, as exempt. Therefore, according to § 101(32)(A), the debtor's remainder interest is excluded from the insolvency calculation. The debtor's liabilities at the time of the transfer totaled $185,196.76. The difference between the debtor's non-exempt assets of $8,703.83 and his liabilities of $185,196.76 clearly demonstrates insolvency.

Perhaps most probative is the debtor's continued use of the farm equipment. There was no practical change in the way the equipment was used after the transfer. The debtor continued to use it in the exact manner as he did before the transfer. Also, the defendant admitted that she did not participate in any of the farm labor. She maintains, however, that she was receiving income from the farming operation as consideration for her allowing the debtor to use the equipment. The defendant did not report any of this income on her tax returns, while the debtor's tax returns continued to reflect that he was engaged in farming.

Finally, as discussed below, the consideration received by the debtor was not reasonably equivalent to the value of the equipment.

Based on the presence of several badges of fraud, I conclude that the debtor transferred the farm equipment with the actual intent to hinder, delay or defraud his creditors.

*Constructive Fraud*

The trustee also seeks to avoid the transfer under § 548(a)(1)(B). To prevail on a claim under this section the trustee must prove, by a preponderance of the evidence, that the debtor was insolvent or became insolvent at the time of the transfer and that the payments made were not made in exchange for reasonably equivalent value. *Pummill v. Greensfelder, Hemker & Gale (In re Richards & Conover Steel, Co.)*, 267 B.R. 602, 612 (B.A.P. 8th Cir. 2001). As discussed above, the debtor was insolvent at the time of the transfer.

Whether a transfer is made for reasonably equivalent value is a question of fact. *Lindell v. JNG Corp. et. al. (In re Lindell)*, 334 B.R. 249, 253 (Bankr. D. Minn. 2005) (citing *Jacoway v. Anderson (In re Ozark Rest. Equip. Co.)*, 850 F.2d 342, 344 (8th Cir. 1988)). This requires an analysis of whether (1) value was given; (2) it was given in exchange for the transfer; and (3) what was transferred was reasonably equivalent to what was received. *Meeks v. Don Howard Charitable Remainder Trust (In re Southern Health Care of Ark., Inc.)*, 309 B.R. 314, 319 (B.A.P. 8th Cir. 2004).

The Bankruptcy Code defines 'value' as "property in satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." § 548(d)(2)(A) "A transfer is in exchange for value if one is the quid pro quo of another." *Pummill*, 267 B.R. at 612. The payment of money from one entity to another is the giving of value for purposes of § 548. *Lindell*, 334 B.R. at 254.

On December 9, 2011, the defendant gave value in the amount of $238,274.87 in exchange for the farm equipment and the real estate. Only $35,142.87 was allocated toward the purchase of the farm equipment. This calculation is not disputed. Nevertheless, it is sufficiently evidenced by the title insurance, appraisal and certificates of real estate values.

8

When determining whether the value transferred was reasonably equivalent to what was received, "the important elements to consider are (1) fair market value and (2) whether there was an arm's length transaction." *Lindell*, 334 B.R. 249 (citing *Barbder v. Golden Seed Co.,* 129 F.3d 382, 387 (7th Cir. 1997)). A determination of reasonably equivalent value is "fundamentally one of common sense, measure against market reality." *Leonard v. Mylex Corp. (In re Northgate Computer Sys., Inc.)*, 240 B.R. 328, 365 (Bankr. D. Minn. 1999). The court must examine all aspects of the transfer and measure the value of all benefits, direct or indirect. *See Pummill*, 267 B.R. at 612.

The defendant paid $35,142.87 for equipment that she has agreed had a fair market value of $129,500. Therefore, she only paid 27.13% of the fair market value. Common sense would likely lead almost anyone to believe that paying 27.13% of the fair market value is not reasonably equivalent value. In fact, I have previously held that purchasing property for 35.5% of its fair market value is not reasonably equivalent value. *In re Lindell*, 334 B.R. 249.

The transfer was made at anything but arm's length. As noted, it is clear that the debtor and the defendant had an intimate relationship at the time of the transfer, the debtor tried to conceal this relationship, and he continued to use the farm equipment after the transfer. Surely, this was not an arm's length transaction, for which the debtor received reasonably equivalent value.

*Conclusion*

In consideration of the totality of the circumstances, I find that the transfer of the farm equipment is avoidable under both § 548(a)(1)(A) and § 548(a)(1)(B).

*Recovery for the Bankruptcy Estate*

The trustee seeks recovery of the value of the property transferred pursuant to 11 U.S.C. § 550. Section 550(a) allows the trustee to recover from any initial transferee the property transferred or the value of the property. Section 548(c), however, provides an affirmative defense for a good faith transferee.

Section 548(c) states,

> a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer.

The Bankruptcy Code does not define good faith. Good faith should be determined on a case-by-case basis. *Sherman*, 67 F.3d at 1355. Good faith should be determined under an objective standard by analyzing what the transferee knew or should have known. *See Goldman v. Capital City Mortg. Corp. (In re Nieves)*, 648 F.3d 232 (4th Cir. 2011). "A transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency." *Sherman*, 67 F.3d at 1355 (citing *In re Anchorage Marina, Inc.*, 93 B.R. 686, 693 (Bankr. W.D. Mo. 1988)).

Here, the defendant was aware of sufficient facts concerning the debtor's financial condition to place her on notice of the debtor's insolvency. Specifically, their close relationship alone should have put the defendant on notice of the debtor's financial situation. During the period of time when they were sleeping together "every now and again" the debtor was essentially homeless and living on the floor of his work place. It is hard to imagine that the debtor was completely oblivious to the debtor's living situation.

More significantly, though, is the undisputed fact that the defendant was paying many of the debtor's debts through her bank account. In fact, the debtor used the defendant's bank account as if it were his own. He eventually had a credit card connected to the account and he would reimburse the defendant for payments made on his debts. Without any other explanation, this arraignment begs the question – why would the debtor need to use the defendant's bank account and borrow money from her unless he was in a precarious financial situation? Certainly the defendant had more than sufficient knowledge to place her on inquiry of the debtor's insolvency.

The defendant is not a good faith transferee and therefore she is not afforded the benefit of a lien under § 548(c).

**ORDER**

THEREFORE, IT IS ORDERED:

1. The debtor's transfer to the defendant, Kim Marie Dailey, of the farm equipment is void under § 548(a)(1)(A) and § 548(a)(1)(B).

2. The trustee shall recover from the defendant the sum of $129,500.00.

LET JUDGMENT BE ENTERED ACCORDINGLY.

        /e/ Robert J. Kressel
ROBERT J. KRESSEL
UNITED STATES BANKRUPTCY JUDGE